J-A25020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.G., MOTHER | : | No. 711 WDA 2021 |

Appeal from the Order Entered May 22, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000008-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: N.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.G., MOTHER | : | No. 712 WDA 2021 |

Appeal from the Order Dated May 22, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000192-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: L.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.G., MOTHER | : | No. 713 WDA 2021 |

Appeal from the Order Entered June 9, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000193-2020

J-A25020-21

| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.G., MOTHER | : | No. 714 WDA 2021 |

Appeal from the Order Entered June 9, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000194-2020

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED: NOVEMBER 19, 2021**

Appellant, T.G. ("Mother"), appeals from the orders entered in the Allegheny County Court of Common Pleas, Orphans' Court Division, granting the petitions of Appellee, the Allegheny County Office of Children, Youth and Families ("CYF"), for involuntary termination of Mother's parental rights to her minor children, L.G., N.G., L.G., and K.S. ("Children").[1]  We affirm.

The relevant facts and procedural history of these appeals are as follows. Mother has six children, two of whom are older than eighteen and not subject to the current proceedings.  CYF first became involved with the family in 2003, and it received fourteen (14) referrals prior to this case being accepted for services in 2016.  (*See* N.T. Hearing, 4/9/21, at 17).  CYF addressed domestic

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Because two of the children have the same initials, we will refer to them as L.G. and L.N.G.

- 2 -

violence against Mother and Children by M.G., Mother's husband and the father of L.G., N.G., and L.N.G. (*Id.* at 10-11). At the time of the termination proceedings, M.G. was awaiting trial on charges of sexually abusing N.G. (*Id.* at 12, 14).

CYF removed N.G. from Mother's care in April 2017, when Mother refused to pick up N.G. following his discharge from a mental health facility. (*Id.*) At the time, Mother stated that she was unable to address N.G.'s mental health needs. (*Id.*) CYF removed L.G. on January 30, 2018, after Mother's inability to address L.G.'s mental health needs resulted in the child's commitment to a mental health facility. (*Id.*)

CYF first removed L.N.G. and K.S. on August 30, 2018. (*Id.*) The removal occurred due to domestic violence in the home. (*Id.* at 16). CYF returned L.N.G. and K.S. to Mother's care in March 2019, after Mother complied with certain CYF services. (*Id.*) Nevertheless, CYF again removed L.N.G. and K.S. in August 2019. At that time, CYF learned that Mother's boyfriend, C.F., was living in the family home and set fire to the garage. (*Id.* at 24, 27). C.F. watched the children when Mother was not present, and he participated in "some sort of altercation" with N.G. (*Id.* at 25).

Mother subsequently failed to comply with her court-ordered family service plan goals. Specifically, Mother refused to sign releases for CYF to obtain proof of compliance with mental health services. (*Id.* at 45). Mother also refused to utilize recommended services including intensive outpatient

treatment for drug and alcohol abuse. (**Id**. at 43-44).

On December 1, 2020, CYF filed petitions for involuntary termination of Mother's parental rights to Children. The court conducted a termination hearing on April 9, 2021. At the hearing, the court heard testimony from Stacey Policicchio, the CYF caseworker, Dr. Patricia Pepe, a licensed psychologist, and Mother. In orders entered May 22, 2021, the court terminated Mother's parental rights to Children.[2] On June 17, 2021, Mother timely filed separate notices of appeal and concise statements of errors at each underlying docket number. This Court consolidated the appeals *sua sponte* on July 14, 2021.

Mother now raises one issue for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of … Mother's parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b)?

(Mother's Brief at 12).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

---

[2] The court also involuntarily terminated M.G.'s parental rights, and he is not a party to the current appeal.

*In re. Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b)  Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  ***In re Z.P., supra*** at 1117.[3]

On appeal, Mother argues that CYF failed to provide clear and convincing evidence that termination would meet the needs and welfare of Children under Section 2511(b).  Mother argues that the court erred in examining her own faults and missteps, and she emphasizes that Section 2511(b) concerns "the welfare of the child and **not the fault of the parent**."  (Mother's Brief at 21) (emphasis in original).  Mother claims that the court should have considered the emotional effect that termination of the bond between Mother and Children would create.  Based upon the foregoing, Mother concludes that the Orphans'

---

[3] Mother concedes that grounds for termination existed pursuant to Section 2511(a)(2).  (**See** Mother's Brief at 18-19).

Court erroneously terminated her parental rights. We disagree.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial

obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Instantly, the court evaluated Children's circumstances following their removal from Mother's care. N.G. was removed from Mother's care over four (4) years ago, and he has not returned to Mother's home ever since. (**See** N.T. Hearing at 15). N.G. was the victim of abuse by his father, and he has required several psychiatric hospitalizations. (**Id.** at 64, 89). In September 2018, N.G. was placed at a group home. (**Id.** at 64). Dr. Pepe testified that N.G. has experienced stability for significant periods when active in therapy and not in contact with Mother. (**Id.** at 108-109).

Although N.G. has expressed that he misses Mother and would like to return home, Dr. Pepe explained that N.G.'s preference has been "variable"

- 9 -

and "reactive."[4]  (*Id.* at 157).  Dr. Pepe noted that N.G. expresses fear of "losing his family" and is "extremely afraid" of his father's upcoming criminal trial.  (*Id.* at 104, 115).  Further, Dr. Pepe explained that N.G. has doubts about his chances for adoption, noting that he experiences PTSD, physical aggression, and suicidal ideations.  (*Id*. at 65, 116).  N.G.'s attachment issues with Mother are ongoing, and "at time he feels rejected by her."  (*Id*. at 102).  In light of this information, the court determined that "the relationship between [N.G] and … Mother is unhealthy and has the potential to further perpetuate [N.G.'s] trauma."  (Orphan's Court Opinion, filed July 26, 2021, at 22).

L.G. has been in ten (10) placements since her initial removal and has experienced five (5) psychiatric hospitalizations.  (*See* N.T. Hearing at 65).  Dr. Pepe testified that L.G. has developed maladaptive personality traits by attempting to placate Mother.  (*Id.* at 99).  Like N.G., L.G. has made "a lot of progress" since being taken out of Mother's care.  (*Id.* at 79).  Ms. Policicchio testified that L.G. has not been hospitalized recently, and L.G. has not displayed severe behavioral issues in her foster home.  (*Id*.)  The court emphasized that L.G. has an "unhealthy relationship with [M]other," and L.G. does not desire to return to Mother's care.  (Orphan's Court Opinion at 23).

L.N.G. and K.S. have lived together in a total of five (5) foster homes,

---

[4] We note that counsel for N.G. has filed an appellate brief arguing for reversal of the order terminating Mother's parental rights to N.G. only.

residing with their current foster mother in a pre-adoptive home since August 2019. (*See* N.T. Hearing at 67). L.N.G. was previously diagnosed with PTSD, and K.S. was diagnosed with an adjustment disorder. (*Id.* at 68). Dr. Pepe testified that L.N.G. and K.S. have made "very positive progress behaviorally and developmentally" and that they have formed "primary attachment" with their foster mother. (*Id.* at 143). Thus, the court concluded that "[n]either [L.N.G.] or [K.S.] have a necessary or beneficial bond with [M]other." (Orphan's Court Opinion at 24).

In light of the evidence presented by CYF, the Orphans' Court concluded that Mother's failure to address her own mental health and addiction issues prevented her from taking care of Children's needs:

> Mother's mental health concerns have prevented her from being able to effectively parent any of her children and most notably, to provide them with the safety and stability that they require. She does not have a necessary or beneficial bond with any of the children. The dependency court has given Mother multiple opportunities to reunify with her children. Each return home was short lived, and reunification was never successful. Each new placement brought new challenges and has had catastrophic effects on the children's development. Nearly all of the children have pervasive and significant mental health concerns; all of which have been directly impacted by their multiple placements and continued relationship with their Mother. For those reasons and the reasons above, the court finds that the benefits of termination far outweigh the negative impact that it may have on the children and that termination of Mother's parental rights best suits the children's needs and welfare.

(Orphans' Court Opinion at 24-25). Our review of the record supports the court's determination. *See In re Z.P., supra*. We emphasize Dr. Pepe's

conclusions that Children exhibit more of a primary bond toward their older siblings than with Mother. (*See* CYF Exhibit 1 at 19).

Here, Mother has repeatedly failed to address Children's extensive mental health issues, refusing to take Children back into her home after their psychiatric hospitalizations. (*See* N.T. Hearing at 15, 102). Mother also exhibits denial of her own mental health issues and has been dishonest about her alcohol use. (*Id.* at 89-90, 134). Finally, Mother continues to make poor decisions, choosing relationships "with men with questionable attributes and alcohol abuse resulting [in] not providing her children with essential care and parental attention." (*See* CYF Exhibit 1 at 14).

Terminating Mother's parental rights would not destroy existing, necessary, and beneficial relationships for Children. *See In re Z.P., supra*. Based upon the foregoing, the record supports the court's conclusion that clear and convincing evidence supported termination for Mother's parental rights under Section 2511(b). *Id.* Consequently, we affirm the orders terminating Mother's parental rights to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021

- 12 -